**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

Ms. Campbell, mark a.
(a/k/a Nicole Rose Campbell)
DOC No. 524661

        Plaintiff,

vs.

Case No. _24-cv-530-jdp_

The Transgender Committee,
The Transgender Housing Committee,
Warden Jennifer McDermott,
Lisa Reible
Cynthia Radtke,
Paul Mittelsteadt,
TCI's Multi-Disciplinary Team, and
Monarch Special Management Unit Treatment Team, and
Captain Chase and Captain Tennesen

        Defendants,

**COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 U.S.C. 1983**

A.   PARTIES

1. I, Ms. Campbell, mark ("Nicole" or "Nicole Campbell" or "Nicole Rose Campbell" henceforth in this case/matter) am a citizen of Wisconsin, and am housed at Taycheedah Correctional Institution ("TCI") located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936. I have been incarcerated since 03/25/2007 and her release date is 03/12/2041. My prison ID number is 524661.

2. Defendants, the Transgender Committee, most all of whom are citizens of Wisconsin, who works for the Wisconsin Department of Corrections ("WDOC") and their place of employment is located at 3099 E. Washington Ave., P.O. Box 7925, Madison, Wisconsin 53707. The Transgender Committee has harmed me and continues to harm me while doing their jobs. Their residential addresses are unknown.

3. Defendants, the Transgender Housing Committee, most all of whom are citizens of Wisconsin, who works for the Wisconsin Department of Corrections ("WDOC") and their place of employment is located at 3099 E. Washington Ave., P.O. Box 7925, Madison, Wisconsin 53707.

The Transgender Housing Committee has harmed me and continues to harm me while doing their jobs. Their residential addresses are unknown.

4. Defendant Jennifer McDermott is a citizen of Wisconsin and is the Warden of TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, who works for the WDOC. Jennifer McDermott has harmed me and continues to harm me while doing her job. Her residential address is unknown.

5. Defendant Lisa Reible is a citizen of Wisconsin and is the Deputy Warden of TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, who works for the WDOC. Ms. Reible has harmed me and continues to harm me while doing her job. Her residential address is unknown.

6. Defendant Cynthia Radtke is a citizen of Wisconsin and is the Security Director of TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, who works for the WDOC. Ms. Radtke has harmed me and continues to harm me while doing her job. Her residential address is unknown.

7. Defendant Paul Mittelsteadt is a citizen of Wisconsin and is the Health Services Unit ("HSU") Assistant Manager at TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, who works for the WDOC. Paul Mittelsteadt has harmed me and continues to harm me while doing his job. His residential address is unknown.

8. Defendant TCI's Multi-Disciplinary Team are citizens of Wisconsin and all of whom works at TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, and all of whom works for the WDOC. The TCI's Multi-Disciplinary Team has harmed me and continues to harm me while doing their jobs. Their residential addresses are unknown.

9. Defendant Monarch Special Management Unit Treatment Team ("MSMU"), are citizens of Wisconsin and all of whom works at TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, and all of whom works for the WDOC. The MSMU Treatment Team has harmed me and continues to harm me while doing their jobs. Their residential addresses are unknown.

10. Defendant Captain Chase is a citizen of Wisconsin and is a Security Supervisor Captain at TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, who works for the WDOC. Captain Chase has harmed me and continues to harm me while doing his job. His residential address is unknown.

11. Defendant Captain Nicholas Tennesen is a citizen of Wisconsin and is a Security Supervisor Captain at TCI located at 751 County Road K, P.O. Box 3100, Fond du Lac, WI. 54936, who works

2

for the WDOC. Captain Tennesen has harmed me and continues to harm me while doing his job. His residential address is unknown.

B.     STATEMENT OF CLAIM

1. I was diagnosed by Cynthia S. Osborne, Dr. Kathy Oriel and Felicia Levine as having Severe Unremitting Anatomic Gender Dysphoria. I have been on Hormone therapy for over 11 years and have undergone the Gender Affirming Surgery on 08/10/2022 at the University of Wisconsin Health Hospital ("UW Health").

2. On 08/15/2022, I was transferred to TCI where I spent a few months in the Phillips Unit Infirmary. After I was released from the infirmary, I was housed on the Monarch Special Management Unit ("MSMU") Wing 4, a General Population Wing of MSMU.

3. On 9/1/2022, at my first surgical after care checkup, UW Health gave me a set of 5 Dilators ranging in different sizes used to keep my vagina from closing up and losing depth.

4. On 1/1/2023, I wrote Correctional Program Supervisor ("CPS") Bruno, asking to be celled up with another inmate, Brandi Bacon, who agreed to be celled up with me. CPS Bruno replied stating, "I have done some following and this is a very real possibility. Give me some time to discuss with unit staff, and then of course time to make arrangements." CPS Bruno was the person in charge of MSMU. Shortly after this is when I found out that there was a medical single cell restriction placed on me because I am transgender using a dilator once a day in cell.

5. On 10/4/2021 and 4/28/2022, while housed at Kettle Moraine Correctional Institution ("KMCI"), I wrote the Transgender Committee with concerns about being house on MSMU and wanting to be housed in the regular General Population (GP") on Abrahamson Building, which MSMU Wing 4 even though it is a GP Wing on MSMU, it only had 14 female inmates with a split dayroom times and there was a single cell restriction placed on me that was approved by Warden McDermott thereby extremely limiting my interactions and contact with the regular GP female inmates.

6. At the time I was housed on MSMU Wing 4, it was  Restricted Housing ("RH") as the Wing 4 inmates were only allowed to have their sharps (disposable razors, toe and fingernail clippers, scissors, tweezers and dental floss) from around 8:00 A.M., or when staff got around to handing the sharps out, to 9:00 P.M. whereas all other GP Housing Units allowed the GP inmates to have their sharps at all times and for someone like me who is a male to Female transgender inmate, I

3

need to shave constantly and apply make-up daily before breakfast in the GP dining hall called, "Prescott." This makes MSMU Restrictive Housing.

7. On 12/7/2022, I wrote the MSMU CPS Bruno regarding MSMU being RH and how pursuant to the Transgender Policy, DAI Policy 500.70.27, under IV. **Placement Review,** I. states, "A transgender or intersex PIOC shall not be placed in RH on the basis of their gender identity." I was housed on MSMU because I have to dilate daily because I received the Gender Affirming Surgery ("GAS") and I received the GAS because of my gender identity. Therefore, I was placed in RH on the basis of my gender identity instead of regular GP housing.

8. On 12/14/2022, I filed an Inmate Complaint ("ICI") Number TCI-2022-18811 regarding my housing placement on MSMU Restrictive Housing and on 12/29/2022 my ICI was "Rejected" for being filed beyond the "14 calendar day limit." On 1/2/2023, I filed a "Request for Review of Rejected Complaint" ("Rejection Appeal"), which was returned by Inmate Complaint Examiner ("ICE"), Ms. Spranger and was resubmitted on 1/11/2023, and on 1/13/2023, Warden McDermott affirmed the rejection of my ICI, thereby exhausting my Administrative Remedies.

9. On 12/22/2022, I wrote the Transgender Committee through Dr. Kevin Kallas a letter regarding my being housed on RH MSMU Wing 4.

10. When I was housed on MSMU Wing 4, there are only two, two person cells and they were full, all other cells on Wing 4 are single cells and as such, I had no idea there had been a single cell restriction placed on me. When the cellmates in one of the two person cells were having major issues with each other, I requested from CPS Bruno, that I be allowed to cell up with one of the inmates in the two person cells that had issues with each other and CPS Bruno was going to allow it until she found out I had a medical single cell restriction in place and then notified me of the single cell restriction.

11. On 1/13/2023, I wrote the Health Service Unit ("HSU") Manager, Ms. Radcliffe, HSU Assistant Manager, Paul Mittelsteadt and Nurse Practitioner, Ms. Lemmenes regarding my single cell restriction, which on 1/20/2023, only Mr. Mittelsteadt replied back stating, "I received three HSRs from you dated 1-13-23. They appear to be duplicates addressed to HSU management and your assigned medical provider. I will reply for all three (after speaking with the other two). The multi-disciplinary team medical judgment determines your continued health needs require this single cell restriction. This is an on-going process and will be assessed for future considerations. I understand you will be filing an ICE complaint as the next step in this process."

4

12. On 1/17/2023 at 11:13 A.M., the HSU Assistant Manager emailed a Nurse Practitioner, Courtney M. Hunt-Janzer, stating, "Patient dropped identical HSR to all of us demanding single cell restriction be lifted. Previously discussed in MSMU meetings- no urgent need to go to single cell from security or program manager. PICO lists many different ways they could accommodate the roommate but in my estimation they do not take into account the preference or inconveniences of the roommate." On 1/18/2023 at 8:35 A.M., Ms. Hunt-Janzer replied, "Agree."

13. On 1/19/2023 at 9:04 A.M., Mr. Mittelsteadt emailed Ms. Lemmenes stating, "PIOC dropped duplicate slips to each one of us demanding single cell medical restriction be lifted. I know single cell was discussed but I do not see this restriction in WICs? Am I missing something?"

14. On 1/24/2023, I wrote HSU Manager, Radcliffe, again requesting the medical single cell restriction be removed. On 2/3/2023, Ms. Radcliffe replied on a few issues , one of which being the single cell restriction issue stating in part, "-Single cell restriction – health services continues to support medical need for a single cell; this is supported based on current medical interventions that are necessary for your surgery to be successful long term. However, the continued need for long term restriction will be reviewed at multi-d next week; we will send a memo with the decision rendered by the multi-d team."

15. ON 2/3/2023, I wrote Ms. Radcliffe in reply, speaking on another inmate who had gone through the GAS, came to TCI from the community, and was allowed to be celled up with another inmate while she had and used her dilators.

16. On 1/27/2023, I filed an ICI, Inmate Complaint Number TCI-2023-1437 to try to get my medical single cell restriction removed. On 2/7/2023, ICE Spranger rejected my ICI stating "Beyond 14 calendar day limit." On 2/7/2023, I filed a Rejection Appeal. On 2/20/2023, the Reviewing Authority Affirmed the rejection of my ICI, thereby exhausting my Administrative Remedies.

17. On 2/7/2023, I wrote Ms. Radcliffe demanding my medical single cell restriction be removed.

18. On 2/7/2023, I wrote ICE Spranger explaining that I was aware that I had been single celled, but that I was not aware that I had a medical single cell restriction placed on me due to the fact that the only two person cells on MSMU Wing 4 were already occupied when I moved onto MSMU.

19. At a Records /File review, I acquired a copy of a handwritten message from Ms. Radcliffe, which in Section A, dated 2/9 and signed by Ms. Radcliffe on 11/29/2022 stating, "Discussed @ multi D –HSU continues to support single cell due to treatment modality. Re-consider plan if pt refusing treatment d/t single cell." Section B of this document was signed by CPS Audra Sulewski and Captain Tennesen. On 2/16/2023, Under Section C of this document, Warden McDermott

5

supported the Multi-Disciplinary Team's medical single cell restriction and signed off on it. In my Security Special Handling a Kellene D. Redeker requested the "Permanent" single cell restriction, was approved by Security Director Cynthia Radtke ("Radtke") and Warden McDermott was the decision maker.

20. On 2/25/2023, I wrote a Health Service Request ("HSR") to Ms. Radcliffe asking her if my single cell restriction has been lifted or not and some registered nurse (RN") replied instead stating, "cell assignment is a security issue. Inquire with Security." Apparently this RN had no idea what was going on and replied to the HSU Manager's mail instead of forwarding it to Ms. Radcliffe as I plainly noted on said HSR stating, "*HSU Manager Ms. Radcliffe.*" On 2/27/2023, Mr. Mittelsteadt did reply stating, "Your single cell restriction remains in place."

21. On 3/1/2023 at 3:25 P.M. Ms. Radcliffe wrote me stating, "**I am writing to address the concerns that you have related to your care here at TCI. Thank you for your patience.** You continue to advocate for a cell mate; the multi-disciplinary team continues to support a single cell. Please note that this is a multidisciplinary decision. This restriction will be reconsidered/reviewed at appropriate intervals. You cite constitution and litigation in your letters; please note that litigation is certainly within your rights. HSU will continue to support medical needs and respect your decisions as it relates to your rights and responsibilities as a patient."

22. On 4/16/2023, I overdosed on Tylenol in a suicide attempt due to being treated indifferently than the rest of the female GP inmates by HSU having a forced single cell restriction placed on me solely due to the fact I am a transgender inmate and due to being housed on MSMU wing 4 where I had very limited contact and socialization with the rest of the female GP inmates with only 14 women hosed on MSMU Wing 4 in all and with having split dayroom times.

23. Before I was taken to the hospital and while at the hospital I refused medical treatment. A Correctional Officer ("CO") and two hospital security officers struggled to force my arms down to put an IV in my arm after the CO gave me a Direct Order to comply with medical treatment. I again refused medical treatment. I was hospitalized for 2 ½ days. When I was returned to TCI, I was immediately placed in Observation status/suicide watch ("OBS"), where for 6 days I refused to eat and drink any fluids in a suicide attempt and I did not speak to any staff unless absolutely necessary. The moment I was released from OBS, I was put in Segregation/Restrictive Housing Unit ("RHU") from a Conduct Report for Disobeying Orders from refusing medical treatment at the hospital after the CO gave me a Direct Order to comply with medical treatment while in the Emergency Room at the hospital. Psychological Services Unit ("PSU") supported the Conduct

Report. After RHU, I was housed back on MSMU Wing 3 for mental health treatment. MSMU Wings 2 and 3 are for inmate mental health treatment.

24. On 7/5/2023, Warden McDermott wrote me stating, "I am in receipt of correspondence dated June 11, 2023 addressed to the Transgender and Housing Committee (c/o, Dr. Kevin Kallas), where you are requesting specific information to file a lawsuit against TCI. Specifically, regarding your single cell restriction and "forced" housing placement restriction. You are housed in MSMU for treatment and on a single cell restriction due to your need /use of a medical device. Your housing placement and single cell restriction is under review at this time. If it is deemed necessary that you will need long term use of your medical device, a process shall be developed to ensure you are able to use your device in a private setting without disruption. The treatment team shall provide you an update on the process."

25. On 7/6/2023, Dr. Kevin Kallas replied to my 6/11/2023 letter stating, "I am aware that Warden McDermott has sent you a response to your inquires, indicating that you are housed on the Monarch Unit for treatment and are on a single cell restriction due to your need for a medical device. She also indicated that your housing placement and single cell restriction are under review at this time and that a process will be developed to ensure you are able to use the medical device in a private setting. Housing individuals at TCI consistent with gender identity is still at an early stage. The operational considerations can be complex and at times are made more complex when medical, mental health and disciplinary issues are involved. As such, TCI staff are in the best position to determine your specific housing unit and placement. I am very much in support of a flexible approach for use of your medical device and it appears that this is in process. With regard to the Transgender Committee and Transgender Housing Committee, neither of these groups has decision making authority over housing placements for any person in our care. That responsibility lies with the facility and by extension the Warden, DAI Administrator and the Secretary's Office. That said, in response to your inquiry about membership, you can find the corresponding job titles for each committee in DAI policy 500.70.27, sections XI and XII."

26. I am not at TCI because TCI is consistent with my gender identity; **I am at TCI because I am a woman in every aspect after my Gender Affirming Surgery.** And DAI Policy 500.70.27 on page 3 under Transgender Committee states, "An advisory committee formed by the DAI Administrator to 'advise on issues related to transgender policies, including health care, accommodations' and property. Membership is listed in Section XI, " under Transgender Housing Committee it states

7

"'An advisory committee formed by the DAI Administrator to advise on issues related to Transgender Housing and placement of transgender PIOC,' especially for requests to be housed in a facility consistent with gender identity. Membership is listed in Section XII," Under **XI. Transgender Committee** A. and B. it states, "A. 'Shall advise regarding transgender practices, including health care, accommodations,' and property. B. 'Shall consult with facility staff as needed regarding management issues, allowed property and accommodations for individual PIOCs,'" and under **XII. Transgender Housing Committee** A., B. and C. it states, "A. 'Shall advise regarding transgender housing.' B. 'Shall make recommendations to the Secretary regarding placement of individual transgender and intersex PIOCs' as described in Sections IV, V and VII. C. 'Shall consult with facility staff as needed regarding management issues of individual PIOC.'"

27. On 9/5/2023, Warden McDermott replied to my 8/10/2023 letter stating, "I am in receipt of your DOC-643 dated August 10, 2023, where you express concerns regarding your housing placement and your single cell restriction. I followed up with CPS Bruno and Captain McGaw regarding your concerns. It was communicated to me that they did have a conversation with you about your housing status upon your release from RHU. They stated that you are due to release from RHU in the very near future and that you will return to MSMU for programming where staff will continue to monitor your progress and treatment. Your single cell status will be reevaluated and a process will be developed for you to utilize your medical device in a private setting. Please continue to work with CPS Bruno and Captain McGaw regarding your housing concerns."

28. On 9/24/2023, I wrote the Transgender Committee complaining about a couple of issues one of which being the medical single cell restriction and wanting it removed and stating how I will be filing a lawsuit regarding this issue.

29. After I had fought hard for over a year, I finally got the single cell restriction removed on 10/20/2023 by the Multi-Disciplinary Team with Warden McDermott's approval even though my single cell restriction didn't expire until 2/18/2024 and was subsequently housed on McCauley Unit ("MC") where I thrived and flourished.

30. On 12/4/2023, I wrote the Transgender and Transgender Housing Committee regarding the fact that the Multi-Disciplinary Team was removing my single cell restriction, however, the run around or complaint I had and have on this was that I was to go to the Phillips Infirmary to dilate with my dilators/medical device instead of being able to dilate in cell while my cellmate is at work, school, library, recreation, church or just out of the room or while my cellmate is asleep

8

and how Joselyn Vargas, jose vargas a transgender inmate who received the GAS while in the community, was allowed to have and use her dilators in cell while celled up with another inmate and how this woman with cervical cancer was allowed to have and use her dilators in cell while celled up with another inmate. On 12/21/2023, Dr. Kevin Kallas replied stating in part, "I received your letter dated December 4, 2023. In that letter you made a request to use your dilator in your own room rather than a room specified by TCI. As I understand it, you are currently allowed to dilate daily in a room that is located near the Health Services Unit and has a toilet and sink. While I can understand that dilating in your room may be more convenient, I am also aware that there are operational reasons that TCI has developed this arrangement related to maintenance of privacy, safety and security. It would not be appropriate for me to advocate that TCI override these considerations."

31. On 12/8/2023, I was celled up with another female inmate, Anne Nelson, and after a couple of weeks, I was offered a Janitor job and began working as a Janitor on a probationary period.

32. The staff on MC wanted the Janitors to be celled up together due to MC being a maximum custody Unit and Janitors have to leave their cell doors open during the hours of their job, thus I was celled up with Natasha Rockow. I got along mutually with all of my cellmates well except one.

33. TCI had a major problem with me using my dilators while I have a cellmate, however, I stated to TCI that I can dilate in bed under my blankets while my cellmate is at school, library, recreation, shower, in the dayroom, in the courtyard, at groups, church Psychological Services or some other appointment, but TCI still refused to allow me to dilate in cell while I have a cellmate.

34. To dilate while I have a cellmate, TCI had me going to the Phillips Infirmary Unit at 5:20 P.M. every night, which is connected to HSU, to dilate in the HSU ex-ray room on the hard ex-ray table where there is not a toilet to clean the lubricating jelly and blood out of my vagina after dilating per UW Health.

35. Dilating entails: putting lubricating jelly (Surgilube that UW Health sent with me) on a dilator then slide the dilator into my vagina keeping slight pressure on it at all time and once the dilator is in as far as it will go with no pain, I just hold the dilator in place without moving it at all for 20 minutes while I watch Television and play Sudoku on my tablet. Per UW Health, I only have to dilate for 20 minutes a day. That's it. The same amount of time it can take a cellmate to have a bowel movement. My dilating under my blankets is 100% private. It's the cleaning out my vagina that is not private. The same as a cellmate having a bowel movement naked from the waist

9

down, which is not private at all as there are no privacy curtains around the toilets in the two person cells here at TCI.

36. To clean out my vagina after dilation, entails: adding a few drops of Baby Shampoo to a little over 100cc of water, filling up a 60cc Piston Syringe, that has a catheter attached to it, with the soapy water, standing up, putting the catheter inside my vagina, sitting down on the toilet and pressing the piston down on the Syringe thereby cleaning out my vagina with soapy water, then repeat the process with just regular water, wipe and then get dressed. This clean out only takes about 3-5 minutes because I get the containers of soapy water and regular water ready while I am clothed when I have a cellmate, the same amount of time it takes a cellmate to urinate and wipe.

37. On 12/08/2023, I went to the Phillips Infirmary to dilate. Officer Eisle stated to me that I would have to dilate in the HSU ex-ray room. Officer Eisle and I went to the HSU ex-ray room where there wasn't a toilet at all and at that time I didn't see a sink either. I explained to Officer Eisle that I needed to use a sink and toilet for cleanup and what that clean up entailed and Officer Eisle said, "Yeah this isn't going to work for your medical needs." Thus Officer Eisle had me dilating in one of the open infirmary rooms where there was a bed, sink and toilet, which worked perfectly and I was very satisfied with this.

38. On 12/14/2024, I went to the Phillips Infirmary to dilate and all the rooms were full. Officer Eisle called Captain McGaw to see where else I could dilate and Captain McGaw stated that I am to dilate in the HSU ex-ray room. After I dilated Officer Eisle and a nurse said I'd have to cleanup in the HSU community inmate public bathroom that all of TCI (sick and diseased) inmates use, putting me at substantial risk for serious harm from contracting a communicable disease(s) such as Hepatitis, Syphilis, HIV/Aids, Covid or some other disease(s).

39. I asked how I was supposed to get to the inmate community public bathroom with lubricating jelly and blood all inside of my vagina and all over my inner thighs. Officer Eisle and a nurse gave me a State towel to put between my legs and I put my clothes on with the towel between my legs and went to the inmate community public bathroom where I pressed the hot water button at least 100 times and nothing but ice cold water came out. Officer Eisle didn't know what to do but send me back to my housing Unit to cleanup in my cell. I walked the ¼ to ½ mile back to the MC Unit, to my cell with a State towel between my legs. After I cleaned up, the towel had lubricating jelly and blood on it. I had to take the towel to the Officer's Station and put it into a florescent yellow hazmat bag and by this time it was dayroom and a lot of inmates were out and

10

seen me put the towel in the florescent yellow hazmat bag. On my way out of the Phillips Infirmary, I told Officer Eisle, Officer Millichamp and the nurse that I'm not coming back to dilate in the HSU ex-ray room that I'm going to dilate in cell.

40. On 12/15/2023 to 12/20/2023, I dilated in cell under my blankets while I had a cellmate and for these 5 days of dilating in cell, my cellmate, Anne Nelson, had no idea I was dilating in cell the entire 5 days.

41. On 12/18/2023, Warden McDermott replied to my 11/28/2023 correspondence stating, "I am in receipt of your correspondence dated November 28, 2023 where you express concern that you have not yet been moved to MC Building and have been waiting over two months. That others have moved and you state you were on the list before them. October 20, 2023 your single cell restriction was removed. As you know, an individuals housing location is an administrative decision and there are many elements taken into consideration. The institution must have the capability to manage its cells and inmates in the best interest of the institution and population as a whole. As of December 8, 2023 your housing placement is in the MC building. Please bring any additional concerns you may have forward by following the chain of command."

42. On 12/21/2023, nurse, Nattily Delacy came to the MC Unit and called me to the Nurses' office where she told me that per security she wants me to go get my dilators and give them to her that they will be kept down in the infirmary, thereby trying to force me to go to the HSU ex-ray room to dilate. UW Health sent my dilators with me on September 01, 2022. The DOC and TCI did not provide me with my dilators. I have a property receipt for them and they are on my Property List. I own these dilators.

43. I told nurse, Nattily Delacy that I will not go to the HSU ex-ray room to dilate that I will dilate in cell while I am celled up with another inmate using 2-6 tampons, hygiene bottles, bananas, hot dogs or whatever I can get a hold of that is equal in size and shape as my dilator, which I did exactly that. At this time I stopped taking all of my medications including my Estrogen until TCI let me have my dilators back and allowed me to dilate in cell..

44. On 12/21/2023 I was so very distraught over being forced to dilate in the HSU ex-ray room that I wrote HSU telling them that since my dilators are my personal property that I want them destroyed if I cannot dilate elsewhere other than the HSU ex-ray room. HSU replied stating, "As discussed today 1/3/24, you will be dilating in HSU daily with your dilators. M. Delacy."

45. On 12/21/2023, I wrote Captain McGaw stating how I will make my own dilators to use in cell and how I will be filing a lawsuit regarding this issue. On 12/22/2023, Captain McGaw wrote

back stating, "Security and HSU staff have designated an area for you to take care of your medical needs. I encourage you to use this area and not take care of your medical needs elsewhere."

46. On 12/21/2023, I filed an ICI regarding Nurse Natalie Delacy taking my dilators from me that are my personal property, that I have a receipt for and is on my property list.

47. On 12/21/2023, I filed an ICI regarding the Multi-Disciplinary Team trying to force me to dilate in the HSU ex-ray room.

48. On 12/22/2023, I wrote HSU Management stating that by stealing my dilators has forced me to dilate in cell with whatever I can come across that is equal in size and shape as my #5 dilator such as 2-3 or more tampons, hygiene bottles, bananas, hot dogs or whatever and that I want my dilators back.

49. On 01/03/2024, I was called out of my cell for a Multi-Disciplinary Team meeting with Captain McGaw, Captain Tennesen, CPS Bruno, CPS Moore, Paul Mittelsteadt, CPS Wilson, nurse Nattily Delacy and a few other staff I do not know, where Captain McGaw had threatened to put me in Restrictive Housing Unit ("RHU"). I asked Captain McGaw under what authority what rule or Policy violation and he replied, "Under my directive." I then explained to Captain McGaw that in order to put me in RHU, I would have to have violated a rule or Policy that there has to be a rule or Policy that exists stating I cannot dilate in cell while I'm celled up with another inmate. Captain McGaw said he would put me in RHU anyway. I then pulled out my Decision and Order in my Writ of Certiorari in Campbell v. Litscher, et al. case number 17CV002729, Dane County and quoted Honorable Judge Juan Colas Decision and Order stating, "Campbell argues that an inmate cannot be disciplined for failing to follow an order that is without authority, citing *State ex rel Andeson-El v. Shade,* 181 Wis. 2d 348. In that case the inmate was disciplined for refusing a staff order to permit a pat down search for which the inmate believed there was no authority. On certiorari review the circuit court reversed the administrative decision and the Court of Appeals affirmed. The record contained no evidence that the requested search was authorized by any policy or rule. The Court of Appeals held that an inmate that DOC 303.24 (now 303.28), only required inmates to follow lawful orders. The holding in *Anderson-El* appears to be on point and is binding. Here the respondents have not pointed to any authority for the order, other than the authority to issue orders. The agency did not act according to law." At the end of the meeting I agreed to go dilate in the HSU ex-ray room, after I explained all of the issues with

dilating in the HSU Ex-ray room, until this Court renders a decision on this case. I told the Multi-Disciplinary Team that I am filing a Federal lawsuit against the WDOC and TCI on these issues.

50. Joselyn Vargas (Jose Vargas) and I were housed on the same housing Unit at Oshkosh Correctional Institution and later were celled up together at Racine Correctional Institution before she was released back to the community. Joselyn received the GAS while in the community, was revoked on her probation, was an inmate here at TCI in the Phillips Infirmary and TCI allowed her to be celled up with another female inmate, Kriscella McHenry, while she had and used her dilators. In March 2021, a female inmate at TCI had cervical cancer in the Phillips Infirmary, who had dilators due to her cervical cancer and she was moved to Abrahamson Building where TCI allowed her to be celled up with another inmate while she had and used her dilators.

51. On 1/3/2024, I wrote the Transgender and Transgender Housing Committees complaining about the incident when I first went to dilate in the HSU ex-ray room and giving them other ways I can dilate in other areas trying to compromise and work with the WDOC to no avail. On 1/22/2024, Dr. Kevin Kallas replied stating, "I am responding to your letters dated January 3, 2024 and January 8, 2024. In those letters you raised ongoing concerns regarding use of your dilators. Your medical chart shows an entry for January 3, 2024 that describes the outcome of the TCI-multi-disciplinary meeting on that date. The rationale for having you dilate in the HSU is to provide privacy during a medical procedure for both you and any person you may be celled up with. You are encouraged to follow the care of plan outlined by HSU and counseled not to use unapproved items to dilate. I am in support of this plan. Additionally, I will defer the details of how your care plan is implemented to the treatment team at TCI. These staff are in the best position to develop an appropriate plan since they work directly with you and are familiar with the security and operational requirements at TCI. I also note you have filed a complaint regarding this issue on January 16, 2024. This is the proper route for resolving any ongoing concerns you may have, since the concerns can be documented, investigated locally and reviewed by the proper Reviewing Authority."

52. On 01/05/2024, I was called to the Officer's Station where I was told, surprisingly so, to pack up my property and move back to MSMU. I had asked why and Sergeant Pelischek stated that he did not know. I did as I was told. I was thriving and flourishing on the MC Unit. I had a good job, the biggest cell on the MC Unit and a good cellmate.

53. When I got to MSMU, Captain McGaw met with me in the MSMU back hallway and explained that the Multi-Disciplinary Team had decided to move me back to MSMU because I had stopped taking my medications, namely my Estrogen. It was later told to me that the Multi-Disciplinary Team was checking to see if this would be harmful or self-harming in nature and that's why the Multi-Disciplinary Team moved me back to MSMU. Three weeks later I was moved back to MC Unit.

54. Three weeks prior to my August 10, 2022 GAS, my surgeon, Dr. Gast, had ordered my Estrogen medication stopped and my Estrogen was not restarted, per the surgical team, until after my first September 01, 2022 post-surgical checkup appointment. Therefore if it was so harmful for me to stop my Estrogen medication then why did my surgeon stop my Estrogen medication for almost two months? The Multi-Disciplinary Team has and had all this information available to them in my records since August 15, 2022 when I was transferred to TCI. Therefore, the Multi-Disciplinary Team knew that by me stopping my Estrogen was not harmful or self-harming and had no reason to move me from where I was happy, thriving and flourishing to MSMU causing me to regress, especially when my surgeon stopped my Estrogen medication for two months. There was no viable reason to move me back to MSMU except retaliation for telling staff I will be filing this lawsuit.

55. On MSMU, I was moved into a single cell. I had fought hard for over a year to get my single cell restriction removed so I could be celled up with another inmate. Captain McGaw had said that I don't have a single cell restriction back in place. At the same exact time I was moving into the single cell #306 there was another inmate Kyoko Becker moving into the completely empty two person cell #307 right next to my cell. Inmate Becker stated to me that she was supposed to have a single cell. On 01/06/2024, Sergeant Gibbert confirmed that inmate Becker was supposed to have a single cell. MSMU staff could have and should have moved me into the two person cell #307 and moved inmate Becker into the single cell #306.

56. When the Multi-Disciplinary Team moved me to MSMU, the Business Office had not processed my employment paperwork yet and because of the move to MSMU I had lost a good cellmate, a nice big cell and more importantly, I lost my good Janitor job thereby putting me into a financial hardship.

57. On MSMU, Sergeant Nothem had given me a wheelchair pushing job in equal pay as my Janitor job I had on the MC Unit and Sergeant Nothem had put in the paperwork (DOC Form 1408) so I could get paid. I started doing my job on the day Sergeant Nothem submitted the 1408 form to

the Business Office, pushing an inmate, Ms. Hill, all the way from MSMU down to the Phillips Infirmary for diabetic insulin check through ice and packed snow. On 01/21/2024, I emailed the Business Office requesting that they please process the 1408 form at their earliest convenience. On 01/22/2024, the Business office emailed me back stating that they contacted staff about my 1408 form and job and staff (the Multi-Disciplinary Team) had pulled my 1408 form and that staff will have to resubmit the 1408 form if they wish to hire me for the job. I had been pushing Ms. Hill from the time Sergeant Nothem submitted the 1408 form to the Business Office to the time I got the email from the Business Office telling me I didn't even have a job. The Multi-Disciplinary Team again caused me to lose my job, and did not tell me they pulled my 1408 form while I was working that whole time thinking I was going to get my first paycheck soon, putting me further into severe financial hardship without even telling me. I believe this has also been retaliation due to the fact that I'm filing a lawsuit against the WDOC and TCI.

58. On 1/8/2024, I wrote Captain McGaw and Security Director Radtke regarding my desire to dilate in cell while I am celled up with another inmate and how this can be done without any inconvenience or knowledge to my cellmate of me dilating.

59. On 1/8/2024 I wrote the Transgender Committee and the Transgender Housing Committee regarding the single cell restriction and being forced to dilate in the HSU Ex-ray room or not dilate at all especially since these issues are transgender issues and are transgender housing issues and the Transgender Committee and Transgender Housing Committee blatantly refused to get involved with and resolve these transgender and transgender housing issues.

60. On 1/10/2024, I wrote the Multi-Disciplinary Team and Security Director Radtke requesting my dilators back to use in cell while I was in a single cell. On 1/19/2024, Security Director Radtke replied stating, "This is in response to your letters received in both my office and the Warden's office starting on January 10, 2024, regarding your housing and your work assignments. Housing within TCI is based on the institution's needs. We will not provide information or comment on another individual. I encourage you to communicate your concerns to the MSMU treatment team." The Multi-Disciplinary Team did not reply back.

61. On 1/14/2024, I filed an ICI Number TCI-2024-831 regarding dilating in cell while celled up with another inmate and ways of doing it where my cellmate would not know about it or would not inconvenience my cellmate. On 2/15/204, ICE Spranger recommended my Complaint be Dismissed, but did not make an actual recommendation on the scope of my ICI, instead she passed it onto the Corrections Complaint Examiner ("CCE") and the Office of the Secretary

("OSS") for a decision on the scope of my ICI and on 2/23/2024, the Reviewing Authority, Haase, made the decision to Dismiss my ICI. On 2/26/2024, I filed an ICI Appeal. On 3/8/2024, the CCE, E. Davidson, recommended my ICI be ultimately Dismissed. On3/25/ 2024, the OOS, Cindy O'Donnell, Dismissed my ICI thereby exhausting my Administrative Remedies.

62. On 01/22/2024, the Transgender Committee and Transgender Housing Committee wrote me back, completely supporting the Multi-Disciplinary Teams' Cruel and Unusual Punishment and Deliberate Indifference treatment of me in having me dilate in the HSU Ex-ray room.

63. On 01/24/2024 at 1:43 P.M., the Multi-Disciplinary Team had a meeting with me to discuss me going to Philips Infirmary/HSU to dilate. I agreed to, however, at the meeting I had thought Mr. Mittelsteadt had said they had a Massage table/bed set up in the HSU ex-ray room, but when I went to Phillips Infirmary/HSU to dilate I found that Mr. Mittelsteadt meant that he had a Massage table/bed set up in the HSU Inmate community public bathroom to dilate in, the HSU Inmate Community Public Bathroom that all of TCI inmates (sick and diseased inmates) use and had me dilate in the HSU Inmate community public bathroom like some dog that isn't house broken. Putting me at substantial risk for serious harm of contracting a communicable disease such as Hepatitis, Syphilis, HIV/Aids, Covid, or some other disease. HSU is where sickness and disease runs ramped in the HSU Inmate Community Public Bathroom. It is very unsanitary, inhumane, humiliating and definitely Cruel and Unusual Punishment and Deliberately Indifferent to a serious medical condition and needs. Mr. Mittelsteadt believes I had an issue about dilating with a window in a room I was dilating in, which is false; I never had any issue dilating in a room with a window in it. I do not know where Mr. Mittelsteadt got this belief from.

64. On 1/30/2024, I wrote Security Director Radtke complaining about the Multi-Disciplinary Team having me dilate inside the HSU Inmate Public Bathroom, how this is a security issue to my health and safety. On February 12, 2024, Warden McDermott replied instead stating, "I am in receipt of your DOC-643 dated January 30, 2024 addressed to Security Radtke. In your correspondence, you express concern about the area you are assigned to use for use of your medical device. I followed up with Captain McGaw who is part of the treatment team about your expressed concerns. He indicated that you were informed that there would be cleaning supplies available to you to use so you could disinfect the area daily prior to using your medical device and that fresh linens would also be offered to your daily. Additionally, he indicated that you were agreement with the plan that was discussed between you and the treatment team. I encourage you to bring your concerns to staff or the treatment team. Please make sure that you

continue to take care of your medical needs and ask for assistance if it is needed. I agreed to dilate in the HSU ex-ray room not the HSU Inmate Public Bathroom.

65. On 1/30/2024, I wrote the Multi-Disciplinary Team regarding how having me dilate inside the Inmate Public bathroom is inhumane, degrading disgusting, is Cruel and Unusual Punishment, is Deliberate Indifference and puts me at risk for serious harm of contracting some communicable disease(s). The Multi-Disciplinary Team did not reply.

66. On 2/1/2024, Warden McDermott wrote me stating, "I am in receipt of your DOC-643 dated December 27, 2023 where you express concerns regarding the room you are assigned to use for use of your medical device. Captain McGaw along with other members of the Treatment Team have followed up with you regarding your concerns and the expectations for use of your medical device. Additionally, they continue to encourage you to meet with PSU when scheduled and bring forward any concerns that you may have before not taking care of your medical needs. The Treatment Team will continue to follow up with you to ensure all of expectations discussed are met. If you have any additional concerns regarding this matter, please contact Captain McGaw or CPS Moore."

67. On 2/1/2024 I wrote Mr. Mittelsteadt to state on record that I am NOT refusing to dilate, that I am however, refusing to dilate inside the HSU Inmate Public Bathroom where sickness and disease runs ramped and how it is humiliating, inhumane, degrading disgusting, is Cruel and Unusual Punishment, is Deliberate Indifference and puts me at risk for serious harm of contracting some communicable disease(s). On 2/26/2024, Mr. Mittelsteadt replied stating, "I am responding to multiple requests and health service requests you have submitted from 2-1-2024 onwards to today's date. You have been directed to perform your dilation in the HSU. The multi-disciplinary team has met with you several times to facilitate this process. This takes into account both your privacy and safety and security concerns. The location of the patient restroom includes all the essential items needed such as the portable exam table, the toilet, a sink with warm water, 2 towels, germicidal wipes, and your dilation supplies. The patient restroom is cleaned daily and also when/if any need for cleaning is determined. There is no evidence communicable diseases are any more or less prevalent in this TCI bathroom. I also note you have requested various dilation supplies to facilitate dilating in your cell. HSU will not issue you these supplies as they are available in the HSU where you are directed to dilate."

68. On 02/05/2024 at 5:20 P.M., I went to the Phillips Infirmary to refuse to dilate in the HSU Inmate Community Public Bathroom, and at that exact time there was a major medical

emergency with an inmate patient to where even if I was going to dilate in the HSU Inmate Community Public Bathroom, I would have been denied the ability to dilate due to the major medical emergency as the Correctional Officer sent me back to my housing Unit. This is even further proof that having me dilate in the HSU Inmate Community Public Bathroom and the HSU ex-ray room will not work at all and if the institution is under Red Phase it means the institution is under total lockdown where I wouldn't be able to go to the Phillips Infirmary/HSU to dilate.

69. On 2/5/2024, I filed an ICI regarding going to the HSU ex-ray room as I agreed upon in the last Multi-Disciplinary Team I attended and found out that instead of the HSU ex-ray room, I was to dilate in the HSU Inmate Public Bathroom and how it is humiliating, inhumane, degrading disgusting, is Cruel and Unusual Punishment, is Deliberate Indifference and puts me at risk for serious harm of contracting some communicable disease(s).

70. On 2/9/2024, I wrote the Multi-Disciplinary Team Supervisor, Dr. Greene and Deputy Warden Reible regarding how having me dilate inside the HSU Inmate Public Bathroom and how it is humiliating, inhumane, degrading disgusting, is Cruel and Unusual Punishment, is Deliberate Indifference and puts me at risk for serious harm of contracting some communicable disease(s). On 2/14/2024, Warden McDermott replied for Deputy Warden Reible instead stating, "I am in receipt of your DOC-643 dated February 9, 2024 addressed to Deputy Warden Reible. In your correspondence you express your concern over having to use your medical device in the HSU bathroom. Please reference the correspondence response from my office sent to you dated February 12, 2024. I strongly encourage you to bring your concerns to the Treatment Team. If you feel that the treatment plan, you agreed with, is not working, you need to make sure you reach out to the treatment team to request a meeting to discuss your concerns."

71. On 2/14/2024, I wrote Dr. Greene, the Multi-Disciplinary Team Supervisor, twice, one; asking her to please set me up with a meeting with the Multi-Disciplinary Team and secondly in reply to her reply to my 2/9/2024 Interview/Information Request slip discussing how I never requested to dilate in a place without a window and how the HSU Inmate Public Bathroom is not a sanitary place to dilate and clean my vagina afterwards especially in a place where inmates who are sick and diseased have bowel movements and urinate.. Dr. Greene replied stating, "Ms. Campbell, sorry for the confusion, I was not trying to put words into your mouth. What was wrong with the first room HSU provided?"

72. On 2/16/2024, I filed an ICI Number TCI-2024-2601 regarding how the Multi-Disciplinary Team is putting me at substantial risk for serious harm of contracting some communicable disease(s)

such as Hepatitis, Syphilis, HIV/AIDS, Covid or some other communicable disease(s) by having me dilate inside the HSU Inmate Public Bathroom and how it is humiliating, inhumane, degrading disgusting, is Cruel and Unusual Punishment, is Deliberate Indifference and puts me at risk for serious harm of contracting some communicable disease(s). On 3/7/2024, ICE Spranger recommended my Complaint be Dismissed, but did not make an actual recommendation on the scope of my ICI. On 3/20/2024, the Reviewing Authority, K. Haase, made the decision to Dismiss my ICI. On 3/22/2024, I filed an ICI Appeal. On4/ 4/2024, CCE, Brad Hompe, recommended my ICI be ultimately Dismissed. On 4/22/2024, the OOS, Cindy O'Donnell, Dismissed my ICI thereby exhausting my Administrative Remedies.

73. On 2/20/2024, I wrote Mr. Mittelsteadt explaining how the last time I dilated in the HSU Inmate Public Bathroom there was soap scum left from an inmate(s) who washed their hands showing that the HSU Inmate Public Bathroom was not at all clean, how the bathroom is only cleaned once a day, how all inmates who are sick and diseased uses the HSU Inmate Public Bathroom, to try and compromise by suggesting I dilate inside the handicap shower on the housing Unit and I asked him to set me up with an appointment to meet with the Multi-Disciplinary Team.

74. On 2/20/2024, I wrote Dr. Greene explaining how I do understand how it can be uncomfortable for me to dilate in cell while my cellmate is in the cell and so again, I tried to compromise offering to dilate inside the handicap shower on my housing Unit and to remove me from the movement list so I would not have to go to the Phillips Infirmary to refuse to dilate inside the HSU Inmate Public Bathroom every single evening day after day for weeks, months and/or years even. Dr. Greene replied stating, "Hi, Ms. Campbell, you have met with the multi-dis team twice in 2024 and they tried to accommodate your requests. Please discuss movement with HSU. My understanding is that you are submitting similar slips to HSU and my response remains consistent with them. I would also encourage you to not refuse PSU sessions so you could come up with a better coping plan."

75. On 2/29/2024, I wrote Dr. Greene requesting in part who reinstated my single cell restriction? She replied, however, she did not tell me who it was that reinstated my single cell restriction. Instead she replied to my other statements regarding how I will no longer work with PSU to please stop trying to encourage me to do so and regarding evidence/documents I requested for my PSU record review was not given to me for my review.

76. On 2/29/2024, I wrote Mr. Mittelsteadt requesting information as to why my single cell restriction was reinstated and who reinstated it. On 3/4/2024, Mr. Mittelsteadt replied stating,

"I received your information request dated 2-29-2024. My understanding is the single cell restriction decision will be communicated to you by the TCI Warden. The process to dilate remains the same. You are on daily movement to the HSU. Secure your dilators and needed supplies from the Nursing Staff. We are standing by to accommodate your dilation in the HSU patient restroom. The dilators and dilation supplies will continued to be secured and maintained by HSU Infirmary staff during the period of your incarceration."

77. On 3/5/2024, I wrote Dr. Greene explaining how I am writing her to exhaust my Administrative Remedies in order to file my lawsuit regarding my single cell restriction and telling her I want the single cell restriction removed and how dilating in the HSU Inmate Public Bathroom/"HSU patient restroom" puts me at substantial risk for serious harm of contracting some communicable disease, how these are Cruel and Unusual Punishment and how the Multi-Disciplinary Team is forcing me to not dilate thereby, making my vagina lose depth and close up which will result in me suffering immense mental anguish, emotional distress, anxiety, depression, stress to the point that I will most likely either attempt to commit suicide or will commit suicide because my vagina will eventually lose depth and will close up and because I refuse to dilate in the HSU Inmate Community Public Bathroom and how these violates Constitutional, Federal, State and Case Laws and violates Policy. She replied stating, "Please refer to the memo from the Warden – Ms. Serchen triaged PSR #3 per my request. Thank you."

78. On 2/29/2024, my single cell restriction was reinstated and I was moved into a single cell against my will, wants and needs. On 3/5/2024, I briefly spoke with the only other post-op transgender inmate here at TCI Jen Haydock (legal name: Jeffrey Haydock) and she stated that she was told by staff that the WDOC has made it or is making it Policy to single cell all post-op male to female transgender inmates who comes to TCI, which is in violation of Title IX and Title VII, discrimination of transgender persons, a protected class, on the basis of sex orientation and identity. TCI allows and has no Policy against the pre-op female to male transgender inmates to be celed up with another inmate even after they have received a Conduct Report for and have been found guilty of sexual misconduct. In the 17 years I have been in prison, I have not received any Conduct Reports for sexual misconduct nor has Ms. Haydock ever received a Conduct Report for sexual misconduct. Therefore, the WDOC has no viable reason to implement such a Policy to single cell all post-op male to Female transgender inmates who comes to TCI except to harass, retaliate and discriminate against us post-op male to Female transgender inmates who comes to TCI. My clinicians, especially Dr. Christiansen, my Psychologist, even

20

stated that this is Discrimination and that she and others here at TCI are advocating to have this single cell restriction on all post-op male to Female transgender inmates removed.

79. On 3/5/2024, I wrote Mr. Mittelsteadt and Warden McDermott regarding my single cell restriction being reinstated and how I want the single cell restriction removed immediately and I explained how I did nothing wrong to cause my single cell restriction to be reinstated, I explained how I am not dilating at all not even in my cell with tampons or with whatever is the same size and shape as my dilator where my vagina will lose depth and close up which will cause me to suffer immense mental anguish, emotional distress, anxiety, depression, stress to the point that I will most likely either attempt to commit suicide or will commit suicide, how I believe they placed the single cell restriction on me to try and force me to dilate inside the HSU Inmate Public Bathroom. Warden McDermott wrote me stating, "I am in receipt of your multiple DOC-643 dated February 29th, and March 5, 2024 where you express concern regarding your recent housing change, requesting to receive your medical device back since you no longer have a roommate, and concerns regarding your previous roommate. Your single cell restriction has not been reinstated. Your housing matter is under review at a higher level and we shall keep you appraised of any changes. The process outlined by the Treatment Team for use of your medical device will not change and for consistency purposes, this process will not be changed. As for your allegations regarding your previous roommate, it is currently under investigation by Captain McClain. Additionally, I encourage you to continue to meet with PSU when scheduled, continue taking care of your medical needs, and to reach out to the Treatment Team if you have additional concerns regarding your health." This shows that all post-op male to Female transgender inmates who come to TCI and who will need to dilate, TCI will force them, just like me, to dilate inside the HSU Inmate Community Public Bathroom, to make their own dilators to dilate in cell or not dilate at all.

80. On 3/7/2024 and 3/10/2024, I wrote Warden McDermott explaining that my single cell restriction was reinstated on 2/29/2024, how on 1/20/2024, the Multi-disciplinary Team removed my single cell restriction for good cause (actually was removed 10/20/2023), why all post-op male to Female Transgender Inmates ("MTFTI") have a single cell restriction placed on them, how Captain Chase requested that all post-op male to Female Transgender Inmates ("MTFTI") have a single cell restriction placed on them and Captain Tennesen approved the single cell restriction be placed on all post-op MTFTI, where in the computer system it says my single cell restriction was reinstated and that I want it removed. On 3/14/2024, Warden

McDermott called me down to speak with me in a hallway corridor with Captain Tennesen and another lady present and told me to "stop putting us on blast about the single cell restriction because it came from a higher level." I asked, "Who gave the order to single cell all post-op MTFTI?" Warden McDermott replied, "I don't know, someone told us to do it and we did it." I said, "so anyone in the community can call you up and tell you to single cell all post-op MTFTI and you do it without knowing who is telling you to do it?" She replied, "No, it came from a higher level, that's all I know, I'll have to explain this to Ms. Haydock also. I don't know why it's such a big deal, we've had other post-op MTFTI here before and it wasn't an issue to have them celled up with other inmates."

81. On 3/7/2024, inmate Kania Quinn signed a Declaration stating, "I was recently celled up with Ms. Nicole Rose Campbell, mark for a few weeks and during that time she was a good cellmate, she was easy going, laid back. She was one of the best cellmates I ever had. If Ms. Campbell and I ever had any issues we would talk it out and compromise or just work it out. To my knowledge, Ms. Campbell never dilated while I was in the cell with her. I never seen her dilating in the cell while I was in the cell. Ms. Campbell was very modest and private. When she used the bathroom she would make sure she was covered up and she would always let me know she had to use the bathroom so that I could turn away out of respect and for more privacy. Ms. Campbell was very respectful of my privacy, property, space and boundaries."

82. On 3/9/2024, inmate Natasha Rockow DOC No. 628409 signed a Declaration stating, "1. Ms. Nicole Rose Campbell, mark and I were celled up together for 2-3 weeks on the McCauley Building, the maximum custody housing Unit. We were stuck in the cell together every day for about 22-24 hours a day Monday through Friday. On Saturdays and Sundays we worked together as weekend Janitors for the McCauley Building on the North side of said Building. 2. Ms. Campbell was one of the best cellmates I ever had in prison. She was always kind, considerate, and respectful of my privacy, my property, my space and my boundaries. She was easy going, easy to talk to and laid back. 3. If Ms. Campbell and I ever had disagreements or arguments, she was always to talk and work things out. She would offer different compromises if we ever were at an impasse. 4. Ms. Campbell was very private and modest. Whenever she had to use the bathroom, she would let me know and would cover up as she used the bathroom because there are no privacy curtains around the toilets in the cells on the McCauley Building and when I had to use the bathroom. Ms. Campbell would ensure she was turned away. 5. The

entire time I was celled up with Ms. Campbell, to my knowledge, she never once dilated in the cell while I was in the cell with her. As I said, Ms. Campbell was very private and modest."

83. On 5/29/2024, Inmate Anne Nelson DOC No. 725685 Signed a Declaration stating, "1. Ms. Campbell and I were celled up together for on the McCauley Building for a few weeks.. We were stuck in the cell together for most of every day. 2. At first, I was very afraid of Ms. Campbell because she is twice as big as me because of my criminal case, but as I got to know Ms. Campbell, I found that Ms. Campbell is kind, considerate, polite and respectful of me, my property, my space and my boundaries. 3. I have had around eleven cellmates and Ms. Campbell was one of the best cellmates I have ever had.. 4. Ms. Campbell told me of her need to dilate after she was upset one day when the nurse came and demanded Ms. Campbell give her her dilators. Ms. Campbell did as she was told. At this time Ms. Campbell went on to tell me that she had been dilating the last five days in the cell while I was her cellmate. I had no idea Ms. Campbell had been dilating those five days because Ms. Campbell is very private and modest. I never once seen or heard Ms. Campbell dilate in the cell the whole time I was celled up with her. 5. Whenever I had to use the bathroom, Ms. Campbell would turn away from me to give me privacy and whenever Ms. Campbell had to use the bathroom, I would turn away to give her privacy even though Ms. Campbell always covered herself whenever she used the bathroom because there are no privacy curtains at all for around the toilet in the two person cells in McCauley Building."

84. On 3/10/2024, I wrote Captain Chase and Captain Tennesen explaining how the Multi-disciplinary Team removed my single cell restriction for good cause,  why do all post-op male to Female Transgender Inmates ("MTFTI") have a single cell restriction placed on them, how this violates Constitutional, Federal, State and Case Laws and violates Policy, is Discrimination and Segregation of a protected class on the basis of sex and transgender status and how I want this single cell restriction on all post-op MTFTI removed immediately.

85. On 3/11/2024, I filed an ICI Number TCI-2024-3943 regarding the single cell restriction placed on all post-op MTFTI. On 4/5/2024, ICE Spranger recommended the dismissal of my ICI. On 45/2024, the Reviewing Authority, Warden McDermott affirmed the dismissal of my ICI. On 4/8/2024 I filed my ICI Appeal. On 4/23/2024, CCE, Brad Hompe recommended my ICI be ultimately Dismissed. On 5/2/2024, the OOS, Cindy O'Donnell, Dismissed my ICI thereby exhausting my Administrative Remedies.

86. On 3/17/2024, I wrote the Transgender Committee and Transgender Housing Committee outlining what DAI Policy 500.70.27, the Transgender Policy says about what the Transgender Committees' and Transgender Housing Committees' involvement are supposed to be as it relates to transgender issues within the institution settings in a last ditch effort to try and get them to help me with these transgender issues regarding the single cell restriction placed on all post-op MTFTI and to try and be able to dilate anywhere else besides the HSU Inmate Public Bathroom as I have never once refused to dilate, I just refused/refuse to dilate inside the HSU Inmate Public Bathroom and how these issues are violations of Constitutional, Federal, State and Case Laws and violates Policy. On 3/25/2024 Dr. Kevin Kallas replied stating, "I received your letter dated March 17, 2024. In that letter you raised two issues: dilating in the HSU bathroom and placement in a single cell. I can see that you filed complaint TCI-2024-2601 on 2/19/24 with regard to dilating in the HSU bathroom. That complaint was dismissed on 3/20/24 by the Reviewing Authority after an investigation that included input from multiple staff and a detailed write-up. As I stated in my previous letter, I will defer the details of how your care plan is implemented to the treatment team at TCI. These staff are in the best position to develop an appropriate plan since they work directly with you and are familiar with the security and operational requirements at TCI. That said, it appears to me that TCI staff have developed appropriate accommodations in a good-faith effort to response to your requests about dilation. I not view the plan to have you dilate in a private space to be inappropriate. I do not consider your concerns about risks of contracting a communicable disease to be realistic. As always, you are free to appeal the complaint decision to the Secretary's Office. You also reported that you have been placed in single cell status and had been receiving conflicting messages from correctional staff and Warden McDermott about your housing placement. I have not been involved in any of these conversations. I can see you filed complaint TCI-2024-3943 on 3/14/24 and within that complaint have outlined your concerns in detail. I agree that this is the best route to having the matter investigated and clarified."

87. What all the DOC has done to me, the DOC knowingly, purposefully and unnecessarily has caused me to suffer immense mental anguish, emotional distress, anxiety, depression, stress to the point that I will most likely either attempt suicide or will commit suicide because my vagina will eventually lose depth and will close up thereby making me nothing more than a Eunuch and because I refuse to dilate in the HSU Inmate Community Public Bathroom, I am forced to dilate with several tampons, hygiene bottles, bananas, hot dogs or whatever I can get a hold of that is

equal in size and shape as my dilator, thereby putting me through Cruel and Unusual Punishment, the DOC has violated and are violating my rights to Equal Protection and the DOC has been and are deliberately indifferent to my serious medical needs, have been and are discriminating against all the post-operative male to female transgender inmates who comes to TCI on the basis of sex and transgender status by single celling all the post-operative male to female transgender inmates who comes to TCI. The DOC are also in violation of #13 and #14 of the Executive Directive #43, the State Employee Work Rules in what all the DOC has done to me and are still doing to me and are in violation of case Laws; Campbell v. Litscher, et al. case number 17CV002729, Dane County and *State ex rel Andeson-El v. Shade,* 181 Wis. 2d 348 as the WDOC has no authority to steal my dilators from me and to force me to dilate in the HSU Inmate Public Bathroom or the HSU ex-ray room.

88. If I do not use the proper dilators to dilate with, my vagina will lose depth and close up making me into just a Eunuch and not a whole and natural woman, which will cause me to go back to living my life in severe - depression, mental anguish, anxiety, emotional distress, stress, suicide ideation, suicide attempts or most likely a successful suicide, which I have planned out if I cannot be allowed to have my dilators in cell and to be able to dilate in cell while I am celled up with another inmate, when my cellmate is to school, library, church, recreation, dayroom, courtyard at any appointment or while my cellmate is sound asleep and where I will keep my dilators locked up in my padlocked drawer TCI provides all inmates who are in a two person cell or if I'm not allowed to dilate in the housing Unit handicap shower at a time inmates are not allowed to shower, or I'm not allowed to dilate anywhere else other than the HSU ex-ray room and especially the HSU Inmate public Bathroom. This has caused my Severe Unremitting Anatomic Gender Dysphoria to worsen and my mental health to decline so badly that I've been placed in Observation status/suicide watch as I was going to overdose on 50 500mg. Tylenol to commit suicide until a friend told staff what I was about to do.

89. I have exhausted all of my Administrative remedies to no avail through the TCI's ICI process pursuant to DOC 310 Administrative code as the ICE, Ms. Spranger and the Reviewing Authority, Mr. Haase did not render a decision on the scope of my Inmate Complaint instead they Dismissed my ICI thereby deferring it to the CCE in the headquarters of WDOC and/or to this Court.

C.    JURISDICTION

I am suing for a violation of federal law under 28 U.S.C. § 1331, under Title IX and Title VII and I am suing the Defendants in their official capacity.

D.    RELIEF WANTED

   1.   I am requesting Preliminary Injunctive Relief in the Court granting the following and if the Court decides not to grant the requested for Preliminary Injunctive Relief then I respectfully request the Court proceed with this case as normal.

   2.   I would like the Court to order the WDOC to allow me to have and use my dilators and dilating supplies including but not limited to (Surgilube) lubricating jelly, 60cc Piston Syringe, mixing container(s) to mix soap and water, two squirt bottles, baby shampoo, sheet protectors and 14 gauge coudé tip catheters in cell while I am celled up with another inmate where I will dilate 100% privately either while my cellmate is out of the cell to school, library, church, recreation, dayroom, courtyard at any appointment or while my cellmate is sound asleep or to have me dilate in the housing Unit handicap shower at a time inmates are not allowed to shower, or have me dilate anywhere other than the HSU ex-ray room and especially other than the HSU Inmate public Bathroom, as I need to start dilating with the proper medical dilators as soon as possible before my vagina loses any more depth and closes up completely causing me to suffer immense mental anguish, emotional distress, anxiety, depression, stress to the point that I will most likely commit suicide.

   3.   I would like the Court to order the Defendants to allow all post-op male to Female transgender inmates to be allowed to be celled up with another inmate, preferably an inmate of their choice if they so choose to be celled up with another inmate.

E.    JURY DEMAND

   Court trial – I want a Judge to hear my case. I do not want a Jury to hear my case.

   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Complaint signed this __28th__ day of __July_____, 2024

                                Respectfully Submitted,

_Nicole Campbell_
Plaintiff's Signature

524661
Plaintiff's Prisoner ID Number

Ms. Nicole Rose Campbell, mark

Taycheedah Correctional Institution

P.O. Box 3100

Fond du Lac, WI. 54936
Plaintiff's Mailing Address

**REQUEST TO PROCEDD IN DISTRICT COURT WITHOUT PREPAYING THE FULL FILLING FEE**

**I Do** request that I be allowed to file this Complaint without prepaying the filing fee. I have completed a Request to Proceed in the District Court without Prepaying the Full Filing Fee form and have attached it to the Complaint

27